Hearing Date:  September 13, 2023
Time:  9:30 a.m.
Location:  Courtroom #1, Phila., PA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| LYM DEVELOPMENT, LLC, | : | BANKR.NO. 23-11435-pmm |
| | : | |
| Debtor. | : | |

**UNITED STATES TRUSTEE'S MOTION TO CONVERT TO CHAPTER 7**

The United States trustee for Region 3 (the "U. S. trustee"), in furtherance of the administrative responsibilities imposed under 28 U.S.C. Section 586(a), moves through his undersigned counsel pursuant to 11 U.S.C. § 1112(b) for the entry of an order converting this case to chapter 7.  In support of his motion, the U. S. trustee represents as follows:

1. LYM Development, LLC (the "Debtor") commenced this case by filing a voluntary petition under subchapter V of chapter 11 of the U. S. Bankruptcy Code on May 17, 2023 (the "Petition Date").  Dkt. No. 1.  Michaela Hayes, as the purported President and Managing Member of the Debtor, authorized the filing of the petition commencing this case. See, Dkt. No. 1, pp. 5 and 6-7.  Ms. Hayes has represented that she has been the sole member of the Debtor since last October.

2. On May 18, 2023, Leona Mogavero, Esq. was appointed the subchapter V trustee in this case.  Dkt. No. 22.

3. Upon information and belief, the Debtor was formed in December 2019 for the alleged purpose of purchasing, renovating, and selling real estate.  The Debtor currently owns properties in Philadelphia and New Jersey in various stages of development.  See Dkt. No. 18, p. 2.

4.  In December 2022 one of the Debtor's creditors, ING Properties, LLC ("ING"), commenced a confession of judgment action against the Debtor in the Court of Common Pleas, Philadelphia County. *Id*. Upon information and belief, ING sought discovery from the Debtor in that litigation, and on April 25, 2023, an order was entered requiring Ms. Hayes to appear to be deposed within ten days of the date of the order, and to produce documents related to the Debtor's financial condition and transactions within five days of the date of the order. Ms. Hayes failed to comply with the order, and ING sought sanctions against her.

5.  On May 5, 2023, foreclosure actions were commenced by another secured creditor against the Debtor's properties located at 1923 Gerritt Street and 2255 Greenwich Street, both in the City of Philadelphia. *Id*. at pp. 2-3.

6.  Ms. Hayes filed the Debtor's Petition twelve days after both her scheduled deposition in the ING matter and the commencement of the above referenced foreclosure actions.

7.  Upon information and belief, the Debtor had minimal operations since January 1, 2023, and no operations during the two to three months preceding the Petition Date. The Debtor has never had employees, and prior to the Petition Date had insufficient resources to pay its insurance premiums and a retainer to its bankruptcy counsel, as evidenced by loans made to the Debtor by Ms. Hayes and Michael Menaged for those purposes respectively. See Dkt. No. 1, p. 40.

8.  Concurrent with the filing of its Petition, the Debtor filed its Schedules and Statement of Financial Affairs, both of which were signed under penalty of perjury by Ms. Hayes. Dkt. No. 1, pp. 14 and 52. On Schedule A/B the Debtor disclosed its ownership interest in five properties, a Bank of America checking account with a zero balance, funds held

2

in escrow by an attorney for the Debtor in the amount of $25,000, and various building supplies with a total replacement value of $10,700. Id. at pp. 19-28. No other assets were disclosed. Upon information and belief, the Debtor's properties are fully encumbered.

9. Several unsecured creditors were listed on Schedule E/F, most of whom are identified as individual investors and/or individuals who loaned money to the Debtor. *Id*. at pp. 39-41. No suppliers or contractors were listed. *Id*.

10. Notwithstanding Ms. Hayes's testimony during the section 341(a) Meeting of Creditors that the Debtor's Schedules and SOFA were complete, and the information set forth thereon was true and accurate, an amended SOFA was filed on June 16, 2023, wherein a transfer of property in March 2022 for over $500,000 was disclosed in response to question number 13. No other transfers have been disclosed. Ms. Hayes signed the amended SOFA. Dkt. No. 71.

11. On June 9, 2023, ING Properties, LLC, filed a motion in this case seeking authority to examine Ms. Hayes pursuant to Fed. R. Bankr. P. 2004. Dkt. No. 57. An order granting the motion was entered on July 17, 2023, requiring Ms. Hayes to appear and give testimony regarding the Debtor's financial affairs and condition and to produce documents and records in her possession regarding the same, as well as the Debtor's relationship to and transactions with other entities, including Orchid Ventures, LLC ("Orchid") which is owned by the father of Ms. Hayes. The documents were to be produced on or before July 24, 2023. Dkt. No. 86.

12. Upon information and belief Ms. Hayes did produce some documents, most of which were copies of mortgages and other loan documents, in addition to copies of bank statements and cancelled checks. She did not produce other financial documents, invoices,

contracts, or documents related to the Debtor's transactions with Orchid.

13. On August 15, 2023, the Debtor's SOFA was amended again to disclose that Ms. Hayes was in possession of the Debtor's books and records on the Petition Date, some, or all of which are allegedly kept at an off-premises storage facility.   Ms. Hayes signed the second amended SOFA.   Dkt. No. 118.

14. Ms. Hayes appeared for the Rule 2004 examination and testified under oath on August 21, 2023.   Remarkably, she did not produce any of the documents she filed to produce earlier, initially claiming that the documents she failed to produce were not in her possession. As the examination progressed, she testified that other financial documents did exist, copies of which were located on her laptop computer at her home and/or at the storage facility identified int eh second amended SOFA.   However, she testified that she made minimal if any effort to identify which documents she had and/or to collect and produce them.

15. Regarding the Debtor's tax returns, Ms. Hayes testified that the Debtor has never filed a tax return and that notwithstanding her statement in the Debtor's Statement About Documents Required by 11 U.S.C. § 1116 that returns would be prepared within one month of the Petition Date, Dkt. No. 2, no returns have yet been prepared.   Ms. Hayes testified that the Debtor was granted extensions to file its returns but could not say when the extensions were granted or when the extensions expire.   It is unlikely that any applications for extensions were ever filed, and if they were, that extensions to file tax returns for 2019 through 2021 remain in place.

16. Regarding the Debtor's operations, Ms. Hayes testified, without limitation, as follows:

4

    a. In addition to acquiring and renovating/building its own properties, the Debtor performed services for other entities and individuals, including Orchid, Drew, and Urban Serenity, which services included project management, construction, and providing acquisition funds.   Hundreds of thousands of dollars were received from and paid out to these individuals and entities, but she could provide no accounting for these transactions, could not remember the specific projects and/or properties involved or what specific services were provided and/or received, could not remember whether all of the funds received by the Debtor were deposited into its bank account, could not remember the names of the individuals with whom she conducted business, and could not recall which transactions were conducted pursuant to written or oral contacts and/or agreements.   Regarding Orchid specifically, the Debtor paid thousands of dollars to contractors and subcontractors for work on Orchid properties, and at least $100,000 for the acquisition of properties by Orchid.   Ms. Hayes testified that the Debtor was reimbursed for these payments in both cash and by check, but could or would not give an accounting, testified that not all the cash receipts were deposited in the Debtor's bank account.   Such reimbursements, if any, cannot be readily traced through bank statements.

    b. She could not recall which projects and/or services were completed and/or performed pursuant to written contracts, the parties to any such contracts, or the specific location of any contracts.

    c. The tens of thousands of dollars in expenses shown on the Debtor's bank statements for purchases including, but not limited to the following: luxury and designer stores including Nordstrom, Barney's, Saks Fifth Avenue, Zara, etc.; cosmetics, nail and hair salons, and spas; hotel accommodations; airline tickets and travel to Las Vegas, California, and St.

Thomas; other stores including Target, Marshalls, Home Goods, Dick's Sporting Goods, etc.; entertainment venues; convenience stores; grocery stores; medical services; and restaurants, were primarily if not exclusively for business purposes including purchasing food, clothing, and other amenities for the Debtor's contractors and subcontractors.   However, Ms. Hayes could not identify to whom such amenities were provided, the projects to which they related, and testified further that she did not keep written records of the same.

        d.        Despite paying tens of thousands of dollars to contractors and subcontractors in addition to providing the above referenced amenities, the Debtor has never issued any W-2s, 1099s, or prepared any accounting related to these expenditures.

        d.        The tens of thousands of dollars in ATM withdrawals were exclusively for business purpose but she was unable to identify the specific purpose for any withdrawal.

        e.        Notwithstanding her testimony during most of the Rule 2004 examination that the Debtor had only had one bank account, a Bank of America checking account, since it was formed and that she maintained exclusive control over and had sole signature authority for that account, Ms. Hayes admitted toward the end of the examination that:   the Debtor had at least one other bank account but could not remember the name of the bank and did not know if and when the account was closed, and she gave one or more debit cards for the Bank of America account to contractors and/or subcontractors.

        17.        Regarding communications related to the Debtor's operations, Ms. Hayes testified that most of the time she communicated by phone or text but was unable to produce any text messages because the iPhone she used for such communications broke and when she replaced it with another iPhone, she did not transfer any of the data to her new phone.

6

18. Ms. Hayes was also asked a series of questions regarding text message exchanges with her contact with ING in which it appears she prepared and transmitted altered portions of one or more of the Debtor's Bank of America bank statements and a copy of at least one altered check, to which she invoked her privilege against self-incrimination under the 5th Amendment to the U. S. Constitution and declined to answer.

19. On August 4, 2023, the Debtor filed its Plan of Liquidation, evidencing its intent to liquidate its assets rather than reorganize. Dkt. No. 109. Pursuant to the Plan, Debtor intends to sell all its properties within six months of confirmation and distribute the proceeds to creditors. While the Plan states that all secured creditors will be paid in full, unsecured creditors are to receive a pro-rata share of any remaining proceeds, which according to the liquidation analysis attached to the Plan is nothing.

20. Based on events occurring during the pendency of its case, the Debtor's ability to consummate its proposed Plan is doubtful. To date, the Debtor has attempted to sell two of its properties without success. On July 31, 2023, an order was entered granting the Debtor's request to sell its property located at 2255 Greenwich Street, Philadelphia, with closing to occur on August 7. Dkt. No. 105. Upon information and belief, the prospective purchaser withdrew its offer to purchase the property and the sale fell through. To date, the Debtor has not responded to requests for an explanation of the reasons for the failed sale.

21. The Debtor also filed a motion to sell its property located at 439 Erial Road, Sicklerville, New Jersey to one of its creditors, Phillip Menaged. Dkt. No. 82. In its motion the Debtor alleged that it had engaged in some marketing of the property, that the proposed purchaser had made a good faith deposit with his offer, and that the transaction was the result of

7

arms-length negotiations even though the Debtor had to borrow funds to pay its bankruptcy counsel from this same individual. The Debtor provided no evidence to support the allegations it made in the motion and has now withdrawn the motion in response to several objections filed thereto.

22. Section 1112(b) of the Bankruptcy Code provides that the court shall convert a case to chapter 7 or dismiss a case for cause. 11 U.S.C. § 1112(b). Dismissal or conversion is mandatory upon a showing of "cause" and such cause is devoid of "unusual circumstances." 11 U.S.C. § 1112(b)(2). *See e.g. In re Kevin A. McKenna, P.C.*, No. CA 472 ML, 2011 WL 2214763 at *2 (D.R.I. May 31, 2011) (finding that "[s]ection 1112(b) requires a court to engage in a three-step analysis: (1) the court must first determine that the movant has demonstrated that cause has been shown by a preponderance of the evidence; (2) If cause has been demonstrated, the court must determine whether unusual circumstances exist to prevent conversion or dismissal; and (3) if no such unusual circumstances exist, the court must convert or dismiss"); and *In re Riverbend Community, LLC*, No. 11-11771 (KG), 2012 WL 1030340 at *3 (Bankr. D. Del. March 23, 2012) (indicating that § "1112(b) is clear that the Court must dismiss or convert [d]ebtor's case if [m]ovants' establish 'cause,'" and that "the only 'but' to the mandatory conversion or dismissal is if the debtor can prove the existence of 'unusual circumstances specifically identified by the court' showing that dismissal or conversion is not in the best interest of the creditors or the estate").

23. While the Bankruptcy Code does not define "cause" as used in 11 U.S.C. § 1112(n), subsection (b)(4) provides a list of circumstances which constitute "cause" for dismissal or conversion. *See*, 11 U.S.C. § 1112(b)(4). However, this list is not exhaustive and therefore

8

a chapter 11 case may be converted or dismissed for other "causes," including bad faith. *See*, *In re Stingfree Technologies, Co.*, 427 B.R. 337, 352 (E.D. Pa. 2010) (acknowledging that "[a] Chapter 11 bankruptcy petition is subject to dismissal for 'cause' under 11 U.S.C. § 1112(b) unless it is filed in good faith") citing *In re SGL Carbon Corp.*, 200 F.3d 154, 161 (3d Cir. 1999). "Once at issue, the burden falls upon the bankruptcy petitioner to establish that the petition has been filed 'in good faith'". *Id*. at 162.

24. Courts which have ruled that "good faith" is a prerequisite to the filing of a chapter 11 petition often list several factors for determining whether the debtor filed the bankruptcy petition in "good faith." *See, e.g.*, *In re SGL Carbon Corp.*, supra. 200 F.3d at 160-69. Some of the factors include:

>    (i) the debtor has few or no unsecured creditors,
>
>    (ii) there has been a previous bankruptcy petition by the debtor or a related entity,
>
>    (iii) the pre-petition conduct of the debtor has been improper,
>
>    (iv) the petition effectively allows the debtor to evade court orders,
>
>    (v) there are few debts to non-moving creditors,
>
>    (vi) the petition was filed on the eve of foreclosure,
>
>    (vii) the foreclosed property is the sole or major asset of the debtor,
>
>    (viii) the debtor has no ongoing business or employees,
>
>    (ix) there is no possibility of reorganization,
>
>    (x) the debtor's income is not sufficient to operate,
>
>    (xi) there is no pressure from non-moving creditors,
>
>    (xii) reorganization essentially involves the resolution of a two-party dispute,

9

>  (xiii) a corporate debtor was formed and received title to its major assets immediately before the petition, and
>
>  (xiv) the debtor filed solely to create the automatic stay.

*In re SB Properties, Inc.*, 185 B.R. 198, 205 (Banker. E.D. Pa. 1995), and 7 COLLIER ON BANKRUPTCY ¶ 112.07[2] at 1112-65 – 1112-67 (15th Ed. 2001) (listing twelve factors that courts have identified as indicia of bad faith).

25.   While the above factors are helpful in determining a debtor's good faith in filing a chapter 11 petition, a determination of a debtor's motive for filing centers on the totality of the circumstances. *In re SGL Carbon Corp.*, supra. 200 F.3d at 162. Accordingly, the absence of good faith is not dependent "on the presence of any one specific factor but upon a combination of factors, after careful examination of all the facts of a debtor's case." *In re Pagano Development Co., Inc.*., Civ. Case No. 11-4448 (FSH), 2011 WL 5082203 at *2 (D.N.J. Oct. 25, 2011). See also, *In re SB Properties, Inc.*, supra. 185 B.R. at 205 n. 5 (citing, *inter alia*, *Carolin Corporation v Miller*, 886 F.2d 693, 701 (4th Cir. 1989)).

26.   The absence of a valid reorganization purpose in a chapter 11 bankruptcy filing also constitutes "bad faith." See, *In re SGL Carbon Corp.*, supra. 200 F.3d at 166. See also, *In re Zais Investment Grade Ltd. VII*, 455 B.R. 839, 848 (Bankr. D.N.J. 2011) (recognizing that "dismissal is appropriate when the petition lacks a 'valid reorganization purpose'"); *In re Pagano Dev. Co.*, supra. 2011 WL 5082203 at *3 (affirming dismissal of a bankruptcy petition where it was "determined that the case was a bad faith filing based on finding that it was a 'two party matter' filed by a 'shell' corporation as 'a litigation . . . or a negotiation tactic,' that it 'lacked valid reorganizational purpose,' and that '[t]he plain motivation here was to delay a termination.'").

10

27. Beginning with the list of circumstances demonstrating cause for conversion under section 1112(b)(4), there is a continuing loss to and diminution of the Debtor's estate. The Debtor continues to borrow money to meet even its minimal expenses, eroding whatever equity, if any, there may be in the Debtor's properties. And, as set forth above, there is an absence of a reasonable likelihood of rehabilitation. Further, Ms. Hayes failed to comply with this Court's order directing her to produce documents regarding the Debtor's financial condition and transactions, and it appears she has no intention of complying in the future.

28. Circumstances demonstrating bad faith also exist including, but not limited to the relatively few unsecured creditors, the apparent and extensive improper pre-petition conduct of the Debtor's principal, the filing of the Debtor's Petition effectively allowed Ms. Hayes to avoid a court order in the state court litigation brought by ING, the Petition was filed solely to create the automatic stay, frustrating and delaying the efforts of creditors to exercise their state court rights against the Debtor's property and to stop litigation regarding the improper conduct of the Debtor's principal Ms. Hayes, the Debtor has no ongoing business or employees, the Debtor's income is insufficient to meet its expenses, and there is no pressure from the majority of the creditors in the case.

29. Having demonstrated cause under section 1112(b), the Court must convert the Debtor's case unless the Debtor can prove the existence of unusual circumstances, which the U. S. trustee avers it cannot.

For these reasons, among others, the U. S. trustee respectfully requests that the Court convert the Debtor's case to chapter 7. The U. S. trustee specifically reserves the right to supplement his motion at or prior to the hearing thereon.

Dated:   August  23 , 2023.                    ANDREW R. VARA
                                               United States trustee, Regions 3 and 9


                                          By:   /s/ Dave P. Adams
                                                 Dave P. Adams
                                                 900 Market Street, Suite 320
                                                 Philadelphia, Pennsylvania 19107
                                                 (215) 597-4411
                                                 (215) 597-5795 (fax)
                                                 dave.p.adams@usdoj.gov